IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RUEBEN V. GLASS,** <br> **Plaintiff,** <br> v. <br> **FIRST JUDICIAL DISTRICT OF PENNSYLVANIA,** <br> **Defendant.** | CIVIL ACTION <br><br><br> NO. 16-5449 |

## **MEMORANDUM OPINION**

Plaintiff, Rueben Glass, has sued his former employer, First Judicial District of Pennsylvania ("FJD"), for employment discrimination alleging disparate treatment and retaliation based upon his gender in violation of Title VII of the Civil Rights Act of 1968 ("Title VII"), 42 U.S.C. § 2000e. Defendant has filed a motion for summary judgment on both of Plaintiff's claims. For the reasons that follow, Defendant's motion shall be granted.

Glass was fired on October 20, 2014 from his job in the Office of Court Compliance for the FJD. He alleges that the firing was the final event in a string of disparate treatment based upon his gender. He also alleges that it was in retaliation for concerns he raised to the FJD about gender based harassment and discrimination. The facts of the dispute center on interactions between Glass – who was a tipstaff – and his co-workers, all of whom were Office of Court Compliance Hearing Officers ("OCC Officers").

## **I.    LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). If the record, upon review in its entirety, leaves no room for a rational trier of fact to find for the non-movant, then no genuine issue of

material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Conversely, if a reasonable trier of fact could find for the non-movant based upon the record as a whole, then a genuine issue of material fact is present. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). Importantly, a genuine issue of material fact may not "simply be some disputed fact," or some assertion that "rest[s] on speculation [or] conjecture," rather, the non-movant must affirmatively identify specific facts in the record that show that there is a genuine dispute for trial." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). A disputed fact is one that can "affect the outcome of the suit. . . . " *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The facts presented "must be viewed in the light most favorable to the nonmoving party. . . . " *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## II. DISCUSSION

### A. Disparate Treatment

Plaintiff's disparate treatment claim is premised on indirect evidence of discrimination and, as such, is analyzed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) as modified for cases of reverse discrimination by *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999). Pursuant to that framework, Glass must first establish his *prima facie* case which in the context of a reverse discrimination case requires him to present sufficient evidence showing that the employer, given the totality of the circumstances, treated "some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 162; *see also Besko v. New Jersey Juvenile Justice Com'n*, 558 F. App'x 295, 298 (3d Cir. 2014). If he does so, the burden of production shifts to the defendant to show a legitimate reason for the adverse action. *Iadimarco*, 190 F.3d at 157. The burden then

returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason was pretextual. *Id*. at 158.

### 1. Evidence of Discrimination

Glass contends that his complaints about his female co-workers were treated differently than their complaints about him; that they were treated more favorably than him when they reported late to work, left early, or had unexplained absences during the day; that he was the only employee investigated for failure to disclose outside work even though his female co-workers failed to disclose as well; and, that the FJD's post termination process was orchestrated to uphold the decision to fire him.

#### *a) Unequal enforcement of work hours*

Glass draws the Court's attention to a reprimand he received on March 14, 2014 from his supervisor, Dominic Rossi. Rossi had received "numerous reports" that Glass often left his work station for extended periods of time and warned Glass that if he continued this behavior there would be "a problem." Glass complains that many of his colleagues came and left at their discretion. He noticed that while he arrived to work and left work on time, they came in late and left early and believed that their absences were not connected to the obligations of their job. He asked Rossi to clarify the operating hours of the rooms in which they all worked and was told that the same working hours applied to him and to his colleagues. Given this clarification, Glass e-mailed Rossi to report when the OCC Officers were absent.

Defendant argues that Glass was treated differently than his co-workers not because of his gender but because he had a different job – they were not similarly situated to Glass and are not appropriate comparators. It is well-established that the identification of a similarly situated comparator outside of the plaintiff's gender, or race, who engaged in the same conduct as the plaintiff but who was treated more favorably, may give rise to an inference of unlawful

3

discrimination. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). It is far less clear, however, as to which step in the burden shifting framework the question of whether the identified comparator employees are similarly situated to a plaintiff, is to be decided. While some cases undertake the analysis in the third step, *see e.g. Wilcher v. Postmaster General*, 441 F. App'x 879, 881 (3d Cir. 2011); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), more recent Third Circuit cases have addressed the issue in the first step. *See Mercado v. Donahoe*, 487 F. App'x 15 (3d Cir. 2012) (male asserting gender and race discrimination failed to establish that co-workers he argued received favorable treatment were similarly situated, and thus was unable to establish *prima facie* case of gender discrimination); *Besko*, 558 F. App'x at 299 (referring to similarly situated analysis in discussion of *prima facie* case).

Given that the similarly situated analysis is infused throughout the parties' briefs, and absent clear guidance as to when the matter should be addressed, the Court will take on the matter up front. To be similarly situated to a co-worker, a plaintiff, must be similar in "all relevant respects," which takes into account, on a case by case basis, the specific job responsibilities, standards employees were held to, their managers, and the alleged misconduct in a given case. *Wilcher*, 441 F. App'x at 882; *see also Houston v. Easton Area Sch. Dist.,* 355 F. App'x 651, 654 (3d Cir. 2009). Co-workers who have different job responsibilities are not similarly situated. *Wilcher*, 441 F.App'x at 882.

In this case, Glass was a Tipstaff while the co-workers he identifies were OCC Officers. Although they worked with him in the same unit, for the same supervisor, and shared the overall goal of serving the public, their jobs were different. Glass' schedule as a Tipstaff was very regular. Every morning he signed in to one room at City Hall and proceeded from there to a different room across the street in the Criminal Justice Center where his key function was to

maintain order. He got an hour for lunch during which he was allowed to leave the building. After lunch, he was assigned to a courtroom in the Criminal Justice Center where he continued his security function but had the added responsibility of checking in defendants and searching for any outstanding warrants on each defendant. If he found an outstanding warrant, he was required to report that fact to his OCC Officer colleagues, and then to the Sheriff's Office. In performing this function, he interacted with four female and three male OCC Officers. As OCC Officers, their duties took them out of the rooms to which Glass was assigned and in which he was required by his job to stay. Glass did not know what those duties were except that one of their jobs was to hold conferences with defendants to set up financial plans to pay outstanding court costs and other fees. Given the differences in job responsibilities, it cannot be concluded that Glass and his OCC Officer co-workers were similarly situated. Thus, they are not proper comparators.

Even if they were, the latitude granted to OCC Officers is not evidence of gender discrimination either, given that male officers were part of the OCC Officer group that Glass observed had "carte blanche to come in late, leave early, and disappear from their designated stations." For example, Glass admits that one of the male officers left early almost daily without repercussion. Likewise, another male officer left early at least once, running into his supervisor in the process. Plaintiff cannot create an issue of fact by selectively focusing on the circumstances of the female OCC Officers while ignoring his male co-workers. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645-46 (3d Cir. 1998).

### b) *Investigation and Termination*

Plaintiff also contends that he was treated differently than women in the manner in which FJD treated disclosures of outside employment. In September 2014, he and the OCC Officers were required by their supervisor to complete an "Outside Employment Disclosure form." Glass

5

completed his form and disclosed that on weekends and during non-work hours he served writs. A male OCC Officer disclosed that he worked for an internet tee shirt company and a bakery while a female OCC Officer disclosed she worked in a pharmacy. Two other female OCC Officers did not disclose outside work, though they both had secondary jobs.

Rossi chose to investigate only Glass' outside employment. He compared all the writs Glass had served through September of 2014 with Glass' timesheets and found that Glass served eleven writs either during work hours, during paid lunch hours, or so soon after work hours that the travel time to where the writ was served necessitated early departure from work. Based on that review alone, Rossi fired Glass for serving writs during work hours, falsifying attendance sheets insofar as they reflected that Glass was present when he was out serving writs, and failing to make proper disclosure on his Outside Employment Disclosure form.

There is no record evidence that Rossi's handling of the complaints or the investigation into Glass' writ serving work, was informed by gender. Although he only investigated Glass, the other employees who filled out disclosure forms included both men and women. Further, there was no mention of gender at any point in the investigation. Thus, while Glass was particularly subjected to stringent rules, it cannot be said that it was because of his gender.

### c) *Termination Procedures*

On October 31, 2014, Glass appealed his termination through to the court administrator. Over the course of two days of testimony Glass and his writ serving partner, Jane Malloy, testified that the eleven writs either stated incorrect dates and times, or were served by Malloy who endorsed them on Glass' behalf. Glass testified that one would not necessarily be able to identify these mistakes by looking at the writs. At the conclusion of the hearing, the court administrator upheld Glass' termination. There is no evidence in the record that gender played

any role in the hearing and thus no grounds on which a fact-finder could determine that the appeal's result was motivated by discriminatory animus.

Plaintiff's assertions are for the above reasons inadequate to support a *prima facie* case of gender discrimination. Glass has therefore failed to satisfy his initial burden under *McDonnell Douglas*.

### 2. Legitimate reason

Even if Plaintiff had been able to establish a *prima facie* case, FJD has proffered a legitimate non-discriminatory reason for firing him: Glass was serving writs (which was not part of his job as a Tipstaff and not associated with his work at FJD) when he should have been working at FJD. He failed to disclose this fact on his Outside Employment Disclosure form and also falsified his timesheet by affirming that he was at his assigned post while he was instead out serving writs.

### 3. Pretext

It thus becomes Plaintiff's burden to identify some evidentiary basis "from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In meeting this burden the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765.

The question then is whether the reasons given for Glass' termination were pre-textual. *Id*. at 763. Glass has not shown by a preponderance of the evidence that they were. Rossi knew from the investigation that Glass was serving writs during work hours, on lunch hours, or at

times so soon after work that they necessarily cut into his work hours. Even taking as true Glass' assertion that the timing and/or dates of these writs were mistaken, Glass agreed that there was no way to conclude as much simply from looking at them. When he fired Glass, Rossi had no reason to think the writs contained errors, given that they appeared to have been signed by Glass. It was therefore unnecessary for Rossi to investigate further before firing Glass. There is no evidence in the record suggesting that Rossi's decision to end Glass' employment turned upon anything other than the result of the investigation. Thus, summary judgment shall be granted in favor of Defendant with respect to Plaintiff's disparate treatment gender discrimination claim.[1]

### B. Retaliation

As in Plaintiff's discrimination claim, retaliation claims arising under Title VII, which lack direct evidence of retaliation, are analyzed under the burden shifting framework laid out in *McDonnell Douglas*. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (applying *McDonnell Douglas* test to Title VII retaliation claim).

#### 1. *Prima facie* case

Plaintiff must first establish a *prima facie* case of retaliation by demonstrating: "(1) that he engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to show a non-retaliatory and legitimate reason for its adverse employment action. The burden then shifts back to the plaintiff to prove that a retaliatory reason

---

[1] It is not necessary to assess whether Defendant's failure to investigate OCC Officers who misrepresented their outside employment forms is evidence of discrimination, as again, they are not similarly situated comparators.

was behind the adverse action. *Shellenberger v. Summit Bancorp*, Inc., 318 F.3d 183, 187 (3d Cir. 2003).

### 2. Protected activity

To show protected activity in the context of a retaliation claim a plaintiff need not prove that the incident itself was a violation of Title VII, only that they had a good faith, objectively reasonable belief that discrimination on the basis of their membership in a protected class was occurring. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). The complaint must in some way reference "discrimination based on a protected category." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011); *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 701-02 (3d Cir. 1995). While protected activity may consist of "informal protests of discriminatory employment practices, including making complaints to management," general complaints of unfair treatment compared to others unmoored to membership in a protected class will not satisfy a plaintiff's burden. *See Daniels*, 776 F.3d at 193-94. If no reasonable person could believe that the incident of which they complained violated Title VII's standard for unlawful discrimination, then the complaint is not protected. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citations omitted).

Here, Glass alleges that he engaged in protected activity when he complained multiple times about co-workers not following the same rules as he was required to follow; him being strictly monitored and held to more stringent work hour standards than other employees; and differential treatment of negative interactions he had with OCC Officers in June and July 2014.

The first and second instances do not constitute protected activity. Complaints that allege generally unfair imposition of rules on one employee over others do not, absent more, rise to the level of protected activity. *Id.*; *see also Daniels*, 776 F.3d at 195 (complaints of excessive

9

monitoring that other employees did not experience was not sufficient to constitute protected conduct).

Turning to the negative interactions, Glass complains that the female OCC Officers regularly picked fights with him and that Rossi failed to take steps to stop them. Glass states that both the confrontations and Rossi's failure to intervene are evidence of gender discrimination. The first incident, in June 2014, involved an altercation between Glass and two female OCC Officers who made disparaging remarks about Glass, calling Glass a "mother f****r" in front of defendants in the courtroom. Glass e-mailed Rossi to complain but Rossi did nothing. Then, in a staff meeting later that month when Glass openly complained to Rossi about how the women were treating him, Rossi dismissively indicated that Glass should "work it out with the girls." While Glass may not have liked the way in which Rossi handled the matter, there is nothing to suggest that his gender informed Rossi's response. Similarly, an e-mail altercation between Glass and a female OCC Officer about whether Glass had failed to check and report on the warrant status of a criminal defendant, which was described by Glass as an attempt by her to cover for the fact that she was not present in the courtroom she was supposed to be in, cannot be attributed to gender discrimination, given the evidence of record.

In the course of all of this, Glass never complained that he was being singled out on the basis of his gender, nor did he make any reference to his gender, or the gender of any OCC Officers. Rossi cannot have retaliated against Plaintiff for complaints about gender discrimination if Glass never mentioned or gave any indication of his belief that discrimination was occurring. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 137 (3d Cir. 2006) (plaintiff's complaints about verbal mistreatment without reference to

gender or race were not protected activity). Thus, Glass has not adduced sufficient evidence to show that he engaged in protected activity.[2]

### 3. Causal connection

Moreover, there is insufficient evidence to show that his complaints to Rossi were causally connected to his termination. Even if Glass had expressed his concerns about gender discrimination to Rossi, the complaints and the termination were too temporally attenuated to be suggestive of retaliation. *See e.g. Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997). Plaintiff's complaints to Rossi were between June and July of 2014, three months before his termination in October of 2014. That is over two and a half months longer than the eleven-day timeframe which the Third Circuit found not to be an unusually suggestive timeframe. *Motto v. Wal–Mart Stores East, LP*, 563 F. App'x 160, 164 (3d Cir. 2014). Thus, Plaintiff has not established a causal connection between his complaints and the termination of his employment and his retaliation claim must fail.

An appropriate order follows.

**August 2, 2017**

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

---

[2] Glass also contends that he was denied reinstatement in his post-termination hearing in retaliation for two letters his attorney wrote to the FJD setting forth his discrimination and retaliation claims. Given that reinstatement was denied because Rossi's investigation uncovered that Glass was at times working for himself when he should have been working at his job for the FJD, that denial is not causally related to the attorney letters. *Huggins v. Coatesville Area Sch. Dist.* 452 F. App'x 122, 128 (3d Cir. 2011).